**UNION WATER SUPPLY CORPORATION OF GARCIASVILLE, a Texas nonprofit corporation, et al.**

v.

**Francis A. VAUGHN, Lower Rio Grande Watermaster, et al.**

**Civ. A. No. 72–B–23.**

United States District Court,
S. D. Texas,
Brownsville Division.

July 11, 1972.

Texas Rural Legal Aid, Inc. (Diana Cisneros, Mission, Tex., and Howbert A. Steele) Rio Grande City, Tex., Mexican American Legal Defense & Educational Fund (Ed Idar, Jr., Mario Obledo and George J. Korbel), San Antonio, Tex., John A. Pope, Jr., Rio Grande City, Tex., and Dr. Anthony Ching, Los Angeles, Cal., for plaintiffs.

Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Roger Tyler, Asst. Atty. Gen., Timothy L. Brown, Chief Examiner, Texas Water Rights Comm., and Milford Lee Hall, Asst. Chief Examiner, Texas Water Rights Comm., Austin, Tex., for defendants.

Hill, King & Waite, Mission, Tex., for amici curiae Water Districts.

## MEMORANDUM AND ORDER OF DISMISSAL

GARZA, District Judge.

By this lawsuit, Plaintiffs tender the Court an invitation to take jurisdiction over the waters of the Rio Grande River. The invitation is declined.

Suit was originally filed herein by Union Water Supply Corporation of Garciasville, Starr County, Texas, against the Texas Water Rights Commission, Lower Rio Grande Watermaster Francis A. Vaughn, and Crawford C. Martin, Attorney General of Texas. Union Water Supply Corporation is a Texas corporation chartered under Article 1434a, Vernon's Tex.Rev.Civ.Stat. Ann. (1962). The corporation conducts business on a non-profit basis and was organized for the purpose of furnishing and distributing treated domestic water to its subscribers.

By amended complaint, Plaintiff has joined as new Plaintiffs various individuals residing near the Rio Grande River, who seek to proceed in their individual capacities and in behalf of all others similarly situated. The amended complaint also named as new Defendants O. F. Dent, Joe D. Carter, Dorsey B. Hardeman, and Louis L. McDaniels, Chairman and members, respectively, of the Texas Water Rights Commission, who are sued both individually and in their official capacities. Plaintiffs allege a cause of action under 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), and the Fifth and Fourteenth Amendments to the Constitution of the United States. Defendants moved to dismiss on the grounds that this Court is without jurisdiction, that the matters sought to be litigated herein are *res judicata*, that Plaintiffs lack standing to sue, and that Plaintiffs failed to exhaust available administrative remedies.

On May 1, 1972, this Court conducted a hearing at which both sides were well-represented and submitted argument as to the status of the case generally and specifically as to the jurisdiction of the Court over the matter. Briefs having been considered, the Court is of the opinion that Defendants' motion to dismiss is well-taken.

Acting under color of the authority conferred upon them by the State of Texas, and pursuant to the decision in State v. Hidalgo County Water Control and Improvement District No. 18, 443 S.W.2d 728 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.), hereinafter sometimes referred to as the Valley Water Suit, Defendants terminated a temporary water permit, which Plaintiff Union Water Supply Corporation had obtained in the above proceeding at the time the corporation was organized and commenced business.

Plaintiffs' contention, in essence, is that individuals have a constitutional right to use water from the Rio Grande River for livestock and domestic purposes, and that the State may not constitutionally deprive individuals of water for such uses. Plaintiffs allege, in addition, that since individuals are vested with a constitutional right to water, that they may appoint an agent, such as Union Water Supply Corporation, to extract their water from the river, purify it, and pump it to their homes for their general use and benefit.

Plaintiffs assert that the Defendants, by denying water to the individual Plaintiffs and their class, are denying, without due process of law, a right, privilege, and immunity guaranteed to them by the Fourteenth Amendment to the Constitution. The individual Plaintiffs have filed a motion for partial summary judgment, contending that they each have an individual right to the use of the Rio Grande River for domestic and livestock purposes, and requesting this Court to so find.

It is here appropriate to relate some of the background incident to the determination of the water rights of the Lower Rio Grande Valley.

The Texas Water Rights Commission is the statutory trustee of the public water resources of the State of Texas. The Commission administers the American Share of the waters of the Lower Rio Grande by and through its appointed Watermaster, Mr. Francis A. Vaughn. Such water is administered for the benefit of persons having valid subsisting rights to consumptive uses from the storage at Falcon Reservoir, and is done so at the expense of such persons. The holders of these water rights have been determined by the adjudication of a state trial court, whose decree was later modified and made final by a state appellate court. State v. Hidalgo County Water Control and Improvement District No. 18, *supra*. The litigation was commenced when concern over the severe drought and water shortage of the 1950's prompted lawsuits invoking the state judicial power to adjudicate water rights on the lower Rio Grande River. Many of these cases reached the appellate courts of Texas. See State v. Hidalgo County Water Con-

trol and Improvement District No. 18, *supra*, 443 S.W.2d at page 731.

In 1956, the State of Texas filed the Valley Water Suit, calling for an adjudication of the water rights of those owning or claiming water rights to lands lying below Falcon Lake or Reservoir, such lands lying within the Delta of the Rio Grande River. Some three thousand Defendants were named in the suit and around one hundred fifty lawyers participated. The mammoth litigation consumed some thirteen years in the courts before finally being brought to rest.

The result of the proceedings was an orderly adjudication of the water rights of the Lower Rio Grande River, the Judgment of the Court reciting exactly how many acre feet, if any, each of the litigants were entitled to. See *Lower Rio Grande Valley Water Documents*, Issued and Compiled by The State of Texas Water Rights Commission and Attorney General, June, 1971.

■ Plaintiffs here have, in effect, proposed that a group of individuals may, under the guise of "domestic and livestock use", appropriate state water for municipal uses without payment therefor. This Court sees a clear distinction between general municipal use and domestic and livestock uses. "Domestic and livestock use", in the present situation, means the use of water by an individual for drinking, washing, and culinary purposes, as well as for the irrigation and cultivation of a garden and the watering of personal livestock. It is clear that the state is not denying and has never denied individuals residing along the river the right to make such use of waters therein. Plaintiffs, realizing this, argue that it is only logical that individuals having a right to domestic and livestock usages of water be allowed to appoint an agent, here Union Water Supply Corporation, to draw the water from the river, purify it, and disseminate it from household to household. This procedure, in effect, would make the transition from domestic to municipal use, as the water would not only be used for collective domestic purposes, but would only naturally find its way to sewage disposal facilities, public parks, fire departments, public buildings, businesses, and small industry. From prior litigation in this district, this Court is aware that in 1971, Union Water Supply Corporation was supplying Pozzolana Brick Company and La Casita Farms with water.

■ Individuals with limited rights to free state water may not band together under the auspices of "domestic and livestock uses" to assert the appropriative powers of municipalities, without the commensurate obligations. Neither the individual Plaintiffs here, nor Union Water Supply Corporation, may stand before this Court as a municipality.

In 1931, the Forty-second Legislature of the State of Texas adopted what is commonly known as the Wagstaff Act, amending Articles 7471 and 7472, Tex. Rev.Civ.Stat.Ann. (1925). Plaintiffs have alleged that the Wagstaff Act, as applied to them, is unconstitutional, and that since it is a statute of statewide application, a three-judge court must be convened to decide the matter, pursuant to 28 U.S.C. § 2281.

The portion of the Wagstaff Act which Plaintiffs find constitutionally infirm is now § 5.028 of the Texas Water Code, V.T.C.A., and reads as follows:

"Any appropriation made after May 17, 1931, for any purpose other than domestic or municipal use, is subject to the right of any city or town to make further appropriations of the water for domestic or municipal use without paying for the water. However, this section does not apply to any stream which constitutes or defines the international boundary between the United States of America and the Republic of Mexico."

Prior to the passage of the Wagstaff Act, it had long been the rule that "as between appropriators, the first in time is the first in right". § 5.027 Texas Water Code. The Wagstaff Act added a schedule of preferences (§ 5.024 Texas

Water Code), and created a pre-emptive right in favor of municipalities as to appropriations subsequent to May 17, 1931. It is readily apparent that § 5.028 subjects cities and towns utilizing the waters of the Rio Grande River, which defines the international boundary between the United States and The Republic of Mexico, to different treatment than cities and towns elsewhere in the state, as regards appropriation of water. Plaintiffs assert that this difference is prejudicial to them and that the State has relied on the Wagstaff Act to deprive them of water.

■ The constitutionality of § 5.028 (prior to codification, Tex.Rev.Civ.Stat. Ann., Art. 7472a (1954)) has heretofore been considered by a federal court. El Paso County Water Improvement District No. 1 v. City of El Paso, 133 F. Supp. 894 (W.D.Tex.1955); reformed and affirmed, 243 F.2d 927 (CA 5 1957); cert. den. 355 U.S. 820, 78 S.Ct. 26, 2 L.Ed.2d 36 (1957). After relating several reasons why the peculiarities of the Rio Grande River allowed it to be treated differently than other state waters, the Court commented at page 907 that "This is enough to suggest, not so much that the statute was well advised, but that, at least, it is not irrational. The article in question is held constitutional". Although this Court is inclined toward a different view of § 5.028, the constitutionality of the provision is simply irrelevant to the situation at bar. Regardless of whether a three judge court declares § 5.028 unconstitutional, Plaintiffs' position in this case will remain unaltered. In the first place, § 5.-028 concerns only the right of any "city or town" to appropriate water. Union Water Supply Corporation is certainly not a "city or town" within the meaning of the statute, nor do any of the individual Plaintiffs or their purported class have municipal status. Although it is alleged that Plaintiffs are residents of Garciasville, Starr County, Texas, Garciasville is not an incorporated city or town, is not a party to this lawsuit, and may not be represented by either these individual Plaintiffs or Union Water Supply Corporation. In the second place, the pre-emptive right of § 5.028 is available only as against post-May 17, 1931 appropriators, none of whom have been joined as Defendants in this lawsuit.

In addition to their attack upon the Wagstaff Act, Plaintiffs have alleged a cause of action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), alleging that the State has infringed upon their constitutional rights by terminating Union Water Supply Corporation's temporary permit and by not allowing Union to draw water for the individual Plaintiff's uses in the capacity of their agent.

It does not appear to the Court that Plaintiffs have alleged deprivations of constitutional magnitude. Union certainly, as a corporation, is vested with no constitutional right to draw water from the Rio Grande without paying for it. It must do as other water supply corporations do—apply for a permit (which it has not done), or purchase the water. There is no question that there now exist water rights along the River which are available for purchase, and the Court notices that several of Union Water Supply Corporation's subscribers are the holders of rights to a considerable amount of water.

■ The individual Plaintiffs here are possessed of the same rights to water as individuals state-wide, and are not treated differently. The waters of the Lower Rio Grande River are within the jurisdiction of the State of Texas, and it is not the province of this Court to assume jurisdiction over what is obviously a matter of state jurisdiction, a matter which has been the subject of extensive state litigation, and a matter involving questions of ownership reserved to and properly decided through state processes. Plaintiffs' remedy, if any, lies with the State of Texas.

Plaintiffs herein also seek to question the jurisdiction of the state courts in the Valley Water Suit, and contest the process therein. An examination of the

state procedures must, therefore, be made.

■ There is no question that states have jurisdiction over rivers and streams within their boundaries. United States v. Rio Grande Irrigation Co., 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136 (1899). "The states have authority to establish for themselves such rules of property as they may deem expedient with respect to the streams of water within their borders both navigable and non-navigable, and the ownership of the lands forming their beds and banks . . . ." United States v. Cress, 243 U.S. 316, 319, 37 S.Ct. 380, 381, 61 L.Ed. 746 (1917). This authority is subject, of course, to the supreme authority of Congress over navigable waterways and to certain constitutional restrictions. Federal Power Commission v. Oregon, 349 U.S. 435, 75 S.Ct. 832, 99 L.Ed. 1215 (1955). Cress, supra. The waters of the Rio Grande River are no exception to the rule of State authority. United States v. Rio Grande Irrigation Co., supra; Hidalgo County Water Control and Improvement District No. 7 v. Hedrick, 226 F.2d 1 (CA 5 1955), cert. den. 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956).

■ It being evident that states control the ownership and disposition of waters within their boundaries, and it also being evident that the State of Texas has jurisdiction over the waters of the Rio Grande, it would appear that the extensive litigation in the Courts of Texas involving the waters of the River foreclosed any claims asserted herein by Plaintiff Union Water Supply Corporation, which appeared in the Valley Water Suit. The Valley Water Suit serves as a bar to Plaintiffs' claims herein, under the doctrine of res judicata. The claims of Union Water Supply Corporation to fifty-two acre feet per year was considered by the Court in the litigation, pursuant to the corporation's written application, and the corporation was found to be entitled to absolutely no water rights whatsoever. No appeal from the judgment was prosecuted by the corporation.

As for the claims of the individuals herein, they assert that for over two hundred years their ancestors used water from the River, withdrawing it by means of buckets, jugs, and barrels, and complain of the State's interference with this virtually timeless procedure. The rights they claim as "centuries old", i. e. the right to use the waters of the River for domestic and livestock purposes, have not been threatened, but remain the same as they have for years. The State made no attempt to prohibit individuals living along the River from using water for domestic and livestock needs, even if this meant an individual installing a small pump to draw the requisite water. It is by this suit that the individual Plaintiffs herein seek to expand these age-old rights to enter an area of state control, which is by necessity subject to orderly adjudication and disposal at the hands of state officials. Individual Plaintiffs herein complain of their failure to be served in the Valley Water Suit and their lack of knowledge of the pendency of the litigation. Overlooked by Plaintiffs is the fact that the Valley Water Suit did not then, nor does it now, affect the right of any individual residing along the River to use water for domestic and livestock purposes. It is only when the transition from individual to municipal use is attempted that the water laws of Texas and the decisions of the Texas Courts come into play.

■ In sum, this Court finds that the state, by terminating Plaintiff Union Water Supply Corporation's temporary water permit has not violated Plaintiffs' constitutional rights. Further, the Court finds that the Valley Water Suit is a bar to the claims of Plaintiff Union Water Supply Corporation, but did not and does not affect the rights of individual Plaintiffs herein.

An adjudication by a Three Judge Federal Court, as to the constitutionality of the Wagstaff Act, would not advance

any aspect of this litigation, and Plaintiffs' request for the convening of a Three Judge Court should be, and is hereby, denied.

Defendants' motion to dismiss is granted. The temporary restraining order heretofore issued in this cause is hereby lifted, and this cause is hereby dismissed.